Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| FIRSTBANK PUERTO RICO<br><br>Apelado<br><br>v.<br><br>IVÁN RAFAEL DÍAZ LÓPEZ<br><br>Apelante | TA2026AP00011 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Toa Alta<br><br>Caso Núm.: BY2023CV02417<br><br>Sobre: Cobro de Dinero y Ejecución de Hipoteca |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Bonilla Ortiz y la Jueza Martínez Cordero.

*Martínez Cordero, jueza ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 12 de febrero de 2026.

Comparece Iván Díaz López (en adelante, señor Díaz López o parte apelante) mediante un recurso de apelación para solicitarnos la revisión de la *Sentencia*, emitida y notificada el 6 de noviembre de 2025, por el Tribunal de Primera Instancia, Sala Superior de Toa Alta.[1] Mediante la *Sentencia* apelada, el foro primario declaró *Ha Lugar* la demanda instada por First Bank Puerto Rico (en adelante, First Bank o parte apelada).

Por los fundamentos que expondremos, se *confirma* la *Sentencia* apelada.

I

El caso del título inició, el 5 de mayo de 2023, con la presentación de una *Demanda* presentada por First Bank, sobre cobro de dinero y ejecución de hipoteca contra la parte apelante.[2] En el pliego, First Bank adujo que el señor Díaz López suscribió un

---

[1] Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC TPI), a la Entrada Núm. 90.
[2] *Íd*, a la Entrada Núm. 1.

pagaré a favor de RG Premier Bank of Puerto Rico y, en aseguramiento de este, constituyó una hipoteca voluntaria mediante escritura pública. Esbozó que, tanto el inmueble como la escritura pública en cuestión, constaban inscritos en el Registro de la Propiedad. Asimismo, alegó ser tenedor de buena fe del pagaré objeto de la reclamación. Sostuvo que la parte apelante adeudaba la suma principal de $43,095.04 dólares; intereses vencidos por la cantidad de $39,033.08 dólares; $1,772.41 dólares por gastos por demora, y una suma adicional de $5,400.00 dólares por concepto de gastos y honorarios de abogado. A tenor, solicitó que se declarara *Ha Lugar* la *Demanda*, y se ordenara la venta en pública subasta de la propiedad para aplicar el importe de la venta al saldo de la deuda.

Posteriormente, el 31 de mayo de 2023, First Bank presentó una *Moción bajo la Ley 184-2012*.[3] Mediante esta, acreditó que, el 19 de mayo de 2023, la parte apelante fue emplazada personalmente y solicitó que se refiriera el caso al procedimiento de mediación compulsoria, toda vez que la propiedad objeto de ejecución constituía la residencia principal del señor Díaz López. Así las cosas, mediante *órdenes*, emitidas el 1 de junio de 2023, y notificadas el 6 del mismo mes y año, el tribunal de instancia expresó haber recibido el emplazamiento diligenciado al señor Díaz López y, en consecuencia, refirió el caso de Centro de Mediación de Conflictos (CMC).[4] Acto seguido, el 19 de junio de 2023, el señor Díaz López presentó una *Moción de prórroga para contestar la demanda o de otra forma defenderse*.[5] En respuesta, el 20 de junio de 2023, el foro de instancia emitió una *Orden* concediendo la prórroga solicitada por la parte apelante.[6]

---

[3] SUMAC TPI, a la Entrada Núm. 4.
[4] *Íd.,* a las Entradas Núm. 5 y 6.
[5] *Íd.,* a la Entrada Núm. 7.
[6] *Íd.,* a la Entrada Núm. 8.

Luego, el 14 de agosto de 2023, el CMC presentó una *Moción informativa sobre caso de ejecución de hipoteca intramuros*.[7] El propósito del escrito fue informar lo relativo a la calendarización de los procesos de mediación en torno al caso.

Posteriormente, el 11 de septiembre de 2023, el CMC presentó una *Moción informativa para devolver el caso al tribunal*.[8] Esbozó que, durante las entrevistas individuales a las partes, surgieron cuestionamientos sobre una alegada sentencia previa y otros aspectos de derecho que escapaban la autoridad del CMC y que no habían sido planteados ante el tribunal de instancia.

En mérito de lo anterior, el 13 de septiembre de 2023, el foro de instancia notificó una *Orden* mediante la cual le concedió a la parte apelada un término de diez (10) días para informar el proceso a seguir.[9] En cumplimiento con lo ordenado, el 18 de septiembre de 2023, First Bank presentó una *Moción en cumplimiento a orden*.[10] Adujo que, en vista de que el señor Díaz López no había presentado el escrito para contestar la *Demanda* o de otra forma defenderse, se emitiera una orden dirigida a este, a los efectos de que presentara sus alegaciones en un término de diez (10) días. A esos efectos, el 20 de septiembre de 2023, el foro de instancia notificó una *Orden* en la cual ordenó a la parte apelante a presentar sus alegaciones en un término de diez (10) días, so pena de anotarle la rebeldía.[11]

Así las cosas, el 29 de septiembre de 2023, la parte apelante presentó su *Contestación a Demanda*, a la cual le incluyó una *reconvención*.[12] En cuanto a la contestación, en términos generales, negó la mayoría de las alegaciones. Se desprende además que, como parte de la contestación, la parte apelante presentó sus defensas

---

[7] SUMAC TPI a la Entrada Núm. 9.
[8] *Íd.,* a la Entrada Núm. 11.
[9] *Íd.,* a la Entrada Núm. 12.
[10] *Íd.,* a la Entrada Núm. 13.
[11] *Íd.,* a la Entrada Núm. 14.
[12] *Íd.,* a la Entrada Núm. 15.

afirmativas. En lo pertinente, alegó que First Bank previamente había radicado una demanda para el cobro del pagaré objeto de esta controversia, en el alfanumérico CD2015-1401. Sostuvo que dicha demanda fue desestimada por falta de causa de acción y legitimidad. Por otro lado, en su *reconvención*, alegó que, como resultado del alfanumérico CD2015-1401, First Bank le adeudaba cierta suma de dinero, por concepto de honorarios de abogado, por temeridad. Ante ello, solicitó que se dictara sentencia declarando *No Ha Lugar* la *Demanda* y *Ha Lugar* la *reconvención*. A tenor, solicitó que se le ordenara a First Bank a pagar la suma principal de $2,000.00 dólares, más intereses al tipo vigente al momento en que se dictó sentencia en el alfanumérico CD2015-1401, así como costas y honorarios de abogado por temeridad.

Subsiguientemente, el 11 de octubre de 2023, First Bank presentó *Contestación a la Reconvención*.[13] Señaló que los reclamos de la *reconvención* son improcedentes, ya que no procedía que, en el caso de autos, la parte apelante pretendiera cobrar una suma de dinero impuesta en otro caso. Expresó que la parte apelante adeudaba mensualidades al descubierto del préstamo hipotecario desde el 1 de marzo de 2015, por lo que, en todo caso, procedería la compensación. A tenor, solicitó que se declarara *No Ha Lugar* la *reconvención* instada por el señor Díaz López.

Posteriormente, el 13 de octubre de 2023, First Bank presentó una *Moción para que se emita orden*.[14] En esta, solicitó que se emitiera orden dirigida al señor Díaz López, a los fines de que expresara si renunciaba al proceso de mediación.

De ahí, el 18 de octubre de 2023, el foro primario emitió tres (3) órdenes. La *primera Orden* fue emitida a los fines de concederle a la parte apelante un término de diez (10) días para que mostrara

---

[13] SUMAC TPI, a la Entrada Núm.16.
[14] *Id.,* a la Entrada Núm. 17.

causa por la cual no se debía desestimar la *reconvención*.[15] Por otro lado, mediante la *segunda Orden* emitida, el tribunal de instancia ordenó a la parte apelada a mostrar causa por la cual no se debía desestimar la *Demanda*, conforme a lo esbozado por la parte apelante en su *Contestación a Demanda*.[16] Finalmente, en la *tercera Orden* emitida, el foro primario determinó *No Ha Lugar* en cuanto a la *Moción para que se emita orden*, presentada por la parte apelada el 13 de octubre de 2023. Lo anterior, debido a que existía un planteamiento de cosa juzgada y/o impedimento colateral por sentencia como defensa afirmativa de la parte apelante.[17]

En cumplimento con lo ordenado, el 27 de octubre de 2023, First Bank presentó una *Moción en cumplimiento de orden*.[18] Alegó que la sentencia emitida por el tribunal de instancia, en el alfanumérico CD2015-1401, desestimó la demanda sin perjuicio. Expresó que el foro de instancia determinó que First Bank carecía de legitimación activa, toda vez que el pagaré no estaba endosado a su favor, sino a la orden del Federal Home Loan Bank of New York. Adujo que la sentencia dictada en el antedicho caso, nada dispuso sobre el cobro de la deuda y la suma de dinero que aún adeudaba la parte apelante. En su consecuencia, solicitó que se declarara *No Ha Lugar* la aplicación de cosa juzgada en el caso de epígrafe, por no corresponder en derecho.

Por su parte, el 30 de octubre de 2023, el señor Díaz López, en cumplimiento con lo ordenado, instó una *Moción mostrando causa e informando desistimiento sin perjuicio de reconvención*.[19] De igual forma, el señor Díaz López también presentó una *Moción*

---

[15] SUMAC TPI, a la Entrada Núm. 18.
[16] *Íd.,* a la Entrada Núm. 19.
[17] *Íd.,* a la Entrada Núm. 20.
[18] *Íd.,* a la Entrada Núm. 21.
[19] SUMAC TPI, a la Entrada Núm. 22.

*informando intención de radicar réplica a "Moción en cumplimiento de orden."*[20]

Luego, el 10 de noviembre de 2023, la parte apelante presentó una *Réplica a Moción mostrando causa, y solicitando la desestimación de la demanda.*[21] Esgrimió, en esencia, los mismos argumentos presentados en su *Contestación a Demanda.* Además, alegó que el tribunal de instancia no resolvió que la demanda se desestimó sin perjuicio, por lo que es forzoso concluir que la sentencia fue una con perjuicio. Sostuvo que, lo anterior, tiene el efecto de una adjudicación en los méritos e impedía que el mismo asunto se pudiese volver a litigar bajo las doctrinas de cosa juzgada y/o de impedimento colateral por sentencia.

Así las cosas, el 13 de noviembre de 2023, First Bank presentó una *Moción aclaratoria en oposición a solicitud de desestimación (Entrada 24).* Esbozó que la demanda fue desestimada debido a que el pagaré estaba endosado a favor de Federal Home Loan Bank of New York y no de Firstbank, quien era su poseedor, por lo que faltaba parte indispensable para poder disponer del litigio.[22] No obstante, reiteró su argumento en cuanto a que el propósito de la sentencia del alfanumérico CD2015-1401 no fue desestimar la demanda con perjuicio. Solicitó que se declarara *No Ha Lugar* la aplicación de cosa juzgada en el caso de epígrafe, por no corresponder en derecho, y que se le ordenara a la parte apelante el cumplimiento con la Ley 184-2012.

En reacción, el 14 de noviembre de 2023, el señor Díaz López presentó una réplica en la cual reiteró sus alegaciones.[23]

Examinadas las posturas de las partes, en esa misma fecha, notificada al día siguiente, el foro de instancia emitió una *Sentencia*

---

[20]*SUMAC*, a la Entrada Núm. 23.
[21] *Íd.,* a la Entrada Núm. 24.
[22] *Íd.,* a la Entrada Núm. 25.
[23] *Íd.,* a la Entrada Núm. 26.

*Parcial* en la cual declaró *Ha Lugar* la solicitud de la parte apelante para que se entendiera como desistido su *reconvención,* sin perjuicio.[24] Posteriormente, el 21 de noviembre de 2023, notificada el 28 del mismo mes y año, el foro primario emitió una *Sentencia Parcial Enmendada* a los efectos de cumplir con los preceptos de la Regla 42.3 de Procedimiento Civil.[25]

Tiempo más tarde, el 18 de marzo de 2024, First Bank presentó una *Moción para que se emita determinación.*[26] En esta, solicitó que el foro primario emitiera una determinación resolviendo las mociones pendientes o, en la alternativa, se remitiera a las partes a mediación y permitiera dar curso a los procedimientos del caso.

De lo que sigue, el 10 de junio de 2024, el tribunal de instancia emitió y notificó una *Resolución* mediante la cual declaró *No Ha Lugar* la desestimación presentada por la parte apelante.[27] Concluyó que el motivo de la desestimación de la demanda, en el alfanumérico CD2015-1401, fue por ausencia de legitimación activa de First Bank, toda vez que el Federal Home Loan Bank of New York era la entidad a favor de la cual constaba endosado el pagaré. De igual manera, expresó que la antedicha sentencia desestimatoria fue sin perjuicio y no constituía cosa juzgada, ya que no se adjudicó en los méritos la causa de acción de cobro de dinero y ejecución de hipoteca. Dispuso que, en el caso de autos, First Bank, como tenedor del pagaré endosado a su favor, tenía derecho a presentar causa de acción de cobro de dinero y ejecución de hipoteca, ya que demostró tener legitimación activa.

Así las cosas, en esa misma fecha, ocurrieron otros tres (3) eventos procesales. El *primer* evento fue que el foro de instancia emitió y notificó una *Orden de Referido al Centro de Mediación de*

---

[24] SUMAC TPI, a la Entrada Núm. 30.
[25] *Íd.,* a la Entrada Núm. 33.
[26] *Íd.,* a la Entrada Núm. 35.
[27] *Íd.,* a la Entrada Núm. 39.

*Conflictos en Casos de Ejecución de Hipoteca,* mediante la cual refirió el caso al CMC.[28] Por otro lado, el *segundo* evento fue que el foro de instancia emitió y notificó una *Resolución y Orden.*[29] En esta, dispuso que era indispensable que las partes examinaran el pagaré hipotecario original. A tales efectos, ordenó que las partes presentaran una moción conjunta en cumplimiento de orden, en la cual indicaran la fecha, hora y lugar donde iba a ser examinado el pagaré original. Finalmente, el *tercer* evento fue que el foro de instancia emitió una *Resolución y Orden,* notificada al día siguiente mediante la cual estableció los términos para el descubrimiento de prueba.[30]

En desacuerdo con la *Resolución* mediante la cual se denegó la solicitud de desestimación interpuesta, el 25 de junio de 2024, el señor Díaz López presentó una *Moción de reconsideración,*[31] la cual fue denegada mediante *Resolución* emitida y notificada el 18 de julio de 2024.[32]

Pendiente lo anterior, el 28 de junio de 2024, First Bank presentó una *Moción en cumplimiento de orden para inspección del pagaré.*[33] En esta, adujo que el representante legal de la parte apelante acudió a la oficina para la inspección del pagaré y que este se llevó una copia fiel y exacta del mismo. Por otro lado, el 18 de julio de 2024, el CMC presentó una *Moción informativa sobre caso de ejecución de hipoteca* mediante la cual señaló que, el 12 de agosto de 2024, se atendería el caso.[34]

Así las cosas, el 18 de julio de 2024, el foro de instancia emitió y notificó una *Resolución* mediante la cual declaró *No Ha Lugar* la *Moción de reconsideración,* relacionada a la solicitud de

---

[28] SUMAC TPI, a la Entrada Núm. 40.
[29] *Íd.,* a la Entrada Núm. 41.
[30] *Íd.,* a la Entrada Núm. 42.
[31] *Íd.,* a la Entrada Núm. 43.
[32] *Íd.,* a la Entrada Núm. 51.
[33] *Íd.,* a la Entrada Núm. 44.
[34] *Íd.,* a la Entrada Núm. 49.

desestimación.[35] Inconforme, el 12 de agosto de 2024, el señor Díaz López interpuso ante este Tribunal un recurso de *certiorari* en el alfanumérico KLCE202400888.[36] En este, solicitó la revocación de la *Resolución* mediante la cual se denegó la solicitud de desestimación interpuesta por el señor Díaz López.

En el interín, el 19 de agosto de 2024, el CMC presentó una *Moción sobre resultado del proceso de mediación.*[37] En esta, indicó que el señor Díaz López no aceptó el servicio de mediación, por lo que dio por concluida su intervención para dar paso al trámite judicial que correspondiera. Ante ello, el 21 de agosto de 2024, el señor Díaz López instó una *Moción aclaratoria.*[38] Señaló que en ningún momento expresó que no aceptaba el proceso de mediación. Aclaró que lo que le expresó a la representante del CMC fue que la *Resolución* del foro de instancia del 10 de junio de 2024, aún no era final y firme debido a que había radicado ante este foro apelativo una petición de *certiorari* y que, mientras estuviese pendiente una adjudicación judicial que pudiera disponer del caso, no era procedente llevar a cabo el proceso de mediación compulsoria.

Posteriormente, el 24 de septiembre de 2024, este Tribunal de Apelaciones emitió una *Resolución,* en el alfanumérico KLCE2024000888, mediante la cual, denegó expedir el auto de *certiorari* presentado por el señor Díaz López y devolvió el caso al foro de instancia para la continuación de los procedimientos.[39]

Así las cosas, el 21 de febrero de 2025, el foro primario notificó una *Orden* a los fines de concederle a las partes un término para informar el estado de los procesos.[40] En cumplimiento con lo ordenado, el 25 de febrero de 2025, First Bank presentó una *Moción*

---

[35] SUMAC TPI, a la Entrada Núm. 51.
[36] *Íd.,* a la Entrada Núm. 52.
[37] *Íd.,* a la Entrada Núm. 55.
[38] *Íd.,* a la Entrada Núm. 56.
[39] *Íd.,* a la Entrada Núm. 61.
[40] *Íd.,* a la Entrada Núm. 64.

*en cumplimiento a orden.*[41] En esta, informó que, mediante *Resolución* fechada 17 de enero de 2025, el Tribunal Supremo declaró *No Ha Lugar* la petición de *certiorari* radicada por el señor Díaz López.[42] No obstante, adujo que el mandato correspondiente no se había emitido.

Posteriormente, el 22 de abril de 2025, First Bank presentó una *Moción para informar y para que se ordene referido a mediación.*[43] Adujo, en síntesis, que el 21 de abril de 2025, se emitió el correspondiente mandato. En virtud de lo anterior, solicitó que se ordenara la continuación de los procedimientos, así como el referido del caso al CMC.

De ahí, el 23 de abril de 2025, el foro de instancia notificó una *Orden* mediante la cual ordenó la continuación de los procesos.[44] Asimismo, en esa misma fecha, mediante *Orden de Referido al Centro de Mediación de Conflictos en Casos de Ejecución de Hipoteca*, el foro de instancia refirió el caso al CMC para que se llevara a cabo el proceso de mediación compulsoria que exige la Ley Núm. 184-2012.[45]

Posteriormente, el 13 de mayo de 2025, el CMC instó una *Moción sobre resultado del proceso de mediación* mediante la cual informó que el señor Díaz López no aceptó el servicio de mediación, por lo cual dio por concluida su intervención para dar paso al trámite judicial que correspondiera.[46]

En esa misma fecha, el señor Díaz López presentó una *Moción informando notificación de Aviso a Toma de Deposición Duces Tecum sobre el estado del pagaré.*[47] Mencionó lo relativo al escrito presentado por la mediadora. Alegó que, a su juicio, existía

---

[41] SUMAC TPI, a la Entrada Núm. 65.
[42] En el alfanumérico CC-2024-0716.
[43] SUMAC TPI, a la Entrada Núm. 70.
[44] *Íd.,* a la Entrada Núm. 71.
[45] *Íd.,* a la Entrada Núm. 72.
[46] *Íd.,* a la Entrada Núm. 75 y 76.
[47] *Íd.,* a la Entrada Núm. 77.

controversia sobre el estado del pagaré y, a tenor, interesaba deponer a un representante de First Bank. Esgrimió, en síntesis, que la finalidad de dicho descubrimiento de prueba era para conocer si First Bank era o no el legítimo tenedor por endoso del pagaré. En respuesta, mediante *Orden* notificada el 16 de mayo de 2025, el foro de instancia quedó enterado.[48]  Conviene mencionar que, conforme se desprende de los autos, dicha deposición fue tomada.

De lo que sigue, el 7 de agosto de 2025, First Bank presentó una *Moción para continuar y sobre sentencia sumaria.*[49] Alegó que, luego de que el caso hubiese sido referido a mediación, la parte apelante no había aceptado el servicio y que, concluido el mismo, este optó por tomar una deposición a esta parte, por medio de un oficial autorizado. A tenor, solicitó se diera por concluido y se dictara sentencia sumaria.

Conviene mencionar que, como parte de su escrito, First Bank incluyó su solicitud de sentencia sumaria. En su pliego, acentuó que la controversia en el caso de autos podía ser adjudicada mediante la lectura del pagaré y la escritura de constitución de hipoteca, de los cuales surgía expresamente cada una de las obligaciones de pagos reclamadas en la *Demanda*. En su escrito, presentó catorce (14) propuestas de hechos incontrovertidos. Al amparo de lo expuesto, solicitó que se dictara sentencia sumaria en cobro de dinero y ejecución de hipoteca contra el señor Díaz López.

Así, pues, el 8 de agosto de 2025, el foro primario emitió una *Orden* concediéndole a la parte apelante un término de veinte (20) días para exponer sobre la solicitud de sentencia sumaria.[50] De ahí, el 25 de agosto de 2025, el señor Díaz López interpuso una *Moción*

---

[48] SUMAC TPI, a la Entrada Núm. 78.
[49] *Íd.*, a la Entrada Núm. 80. La parte apelada acompañó su petitorio sumario con los documentos siguientes: Anejo 1: Certificación Registral de la Propiedad Inmueble; Anejo 2: Pagaré Hipotecario; Anejo 3: Declaración Jurada de Franklin Cordero Rodríguez; Anejo 4: Escritura de Hipoteca; Anejo 5: Declaración Jurada de Michael García Falconer; Anejo 6: Proyecto de Sentencia.
[50] SUMAC TPI, a la Entrada Núm. 81.

*de reconsideración y en solicitud de orden.*[51] En esta, solicitó la reconsideración de la *Orden* emitida por el foro de instancia el 8 de agosto de 2025, en la cual concedió un término para contestar la solicitud de sentencia sumaria presentada por First Bank. Adujo que, lo anterior, era improcedente debido a que no se había llevado a cabo el proceso de mediación compulsoria mandatado por la Ley 184-2012. Por otro lado, expresó que, hasta que no se resolviera si First Bank tenía legitimación activa para cobrar el pagaré en cuestión, era improcedente que se enviara el caso de vuelta a la medicación compulsoria, mandatado por la Ley 184-201.

De ahí, en esa misma fecha, el foro de instancia emitió una *Orden* en la cual le requirió a la parte apelante que cumpliera con la *Orden* emitida el 8 de agosto de 2025, entiéndase, que presentara su contestación a la solicitud de sentencia sumaria.[52]

Luego de haber solicitado y obtenido un tiempo adicional concedido por el tribunal de instancia, en cumplimiento con lo ordenado, el 18 de septiembre de 2025, el señor Díaz López presentó una *Oposición a moción de sentencia sumaria y contra-solicitud de sentencia sumaria desestimando la demanda.*[53] Con relación a los hechos propuestos como incontrovertidos, aceptó algunos en su totalidad, otros en parte, así como que negó ciertas propuestas.

Como parte de su escrito, el apelante también incluyó una solicitud de sentencia sumaria, para que se desestimara la *Demanda.* El apelante incluyó tres (3) propuestas de hechos incontrovertidos. Peticionó que se declarara *No Ha Lugar* la moción de sentencia sumaria presentada por First Bank y se desestimara la

---

[51] SUMAC TPI, a la Entrada Núm. 82.
[52] *Íd.*, a la Entrada Núm. 83.
[53] *Íd.,* a la Entrada Núm. 86. La parte apelante acompañó su petitorio sumario con los documentos siguientes: Anejo 1: Sentencia del caso en el alfanumérico CD2015-1401; Anejo 2: Deposición de Laura Dávila Mercado, Anejo 3: Continuación de la Deposición de Laura Dávila Mercado.

*Demanda* por falta de causa de acción y legitimidad, así como que se impusieran costas y honorarios de abogado.

Habiendo quedado sometida la controversia, el 6 de noviembre de 2025, el foro de instancia emitió y notificó la *Sentencia* que nos ocupa.[54] En ella, declaró *Ha Lugar* la *Demanda* instada por First Bank. A tenor, ordenó a la parte apelante el pago de $43,095.04 dólares de principal; $40,564.76 dólares por concepto de mensualidades en atrasos, con intereses al 6.125% anual, desde el 1 de febrero de 2015 al 12 de septiembre de 2023, más los acumulados desde esa fecha en adelante; $1,838.05 dólares por concepto de cargos por demora al 12 de septiembre de 2023, y $5,400.00 dólares equivalente al 10% del principal, por concepto de honorarios de abogado. Asimismo, ordenó la venta en pública subasta del inmueble hipotecado para aplicar el importe de la venta al saldo de la deuda.

Como parte del dictamen emitido, el tribunal apelado emitió las siguientes cuatro (4) determinaciones de hechos:

1. La parte demandada constituyó Pagaré Hipotecario por la suma principal de $54,000.00 a la orden de RG Premier Bank of Puerto Rico, con intereses al 6 1/8% anual, autenticado dicho pagaré mediante Testimonio #2,318 ante el Notario Público Pablo F. Jiménez Meléndez, fechado 25 de marzo de 2003. FIRSTBANK PUERTO RICO es el tenedor del pagaré y el acreedor hipotecario.

2. Quedó dicho pagaré hipotecario garantizado con hipoteca constituida mediante la Escritura #95 de igual fecha y ante el mismo Notario, garantizada dicha hipoteca con la propiedad descrita en el párrafo #3 de esta sentencia.

3. Que la anterior hipoteca quedó garantizada con la propiedad descrita a continuación:

   ---URBANA: Propiedad Horizontal: Apartamento número 1705 de forma irregular, constituido por un nivel, localizado en el piso 17 del edificio Lagos del Norte Apartments, que está localizado en el Barrio Sabana Seca del Municipio de Toa Baja, Puerto Rico. Consta de un nivel, siendo sus linderos los siguientes: por el NORTE, con el espacio exterior, en una distancia de 7.31 metros; por el SUR, con el corredor principal, en una distancia de 7.31 metros; por el ESTE, con el apartamento 1706, en una distancia de 8.03 metros; y por el OESTE, con el espacio exterior, en una distancia de 7.44 metros. Consta el mismo de una habitación con sus respectivos closets, una sala-comedor, cocina, un baño, área

---

[54] SUMAC TPI, a la Entrada Núm. 90.

de almacenar, balcón. El baño está equipado con bañera, lavabo y servicio sanitario. El área total del apartamento es de 57.38 metros cuadrados. La puerta de entrada de este apartamento está situada en su lindero Sur, y por ella se sale al corredor principal. Este apartamento tiene una participación de 0.3518% en los elementos comunes generales del proyecto. Le corresponde como elemento común limitado el estacionamiento identificado con el número 319.

---Inscrita al folio 82 del tomo 534, número 28,829 de Toa Baja. Registro de la Propiedad de Puerto Rico, Sección II de Bayamón. --

4. La parte demandada adeuda a la parte demandante la cantidad de $43,095.04 de principal a partir del 1ro. de marzo de 2015, $40,564.76 por concepto de mensualidades en atrasos con intereses al 6.125% anual de interés desde el 1ro de febrero de 2015 al 12 de septiembre de 2023, más los que se acumulen desde esa fecha en adelante, $1,838.05 de cargos por demora al 12 de septiembre de 2023, y la cantidad de $5,400.00, equivalente al 10% del principal por honorarios de abogado pactados, la propiedad garantiza una cantidad igual por intereses vencidos que se acumulen hasta dicho monto, la propiedad garantiza una cantidad igual por adelanto, si algunos, que tenga que incurrir el acreedor.[55]

El foro de instancia concluyó que First Bank logró probar, mediante documentación admisible, que tiene legitimación activa en el caso del título, que la deuda estaba vencida y era líquida y exigible, por lo que procedía la reclamación interpuesta.

En desacuerdo con lo resuelto, el 21 de noviembre de 2025, el señor Díaz López presentó una *Moción de reconsideración*.[56] Arguyó que existía controversia de hechos sobre varios aspectos que resultan medulares e indispensables para poder adjudicar la moción de sentencia sumaria instada por la parte apelada. Solicitó que se reconsiderara y se dejara sin lugar la *Sentencia* emitida por el foro de instancia, mediante la cual declaró *Ha Lugar* la *Demanda* instada por First Bank.

En reacción, el 1 de diciembre de 2025, la parte apelada interpuso una *Moción en oposición a solicitud de reconsideración de sentencia*.[57] Esbozó que el señor Díaz López tuvo acceso al pagaré original, por lo que se le permitió constatar su autenticidad,

---

[55] SUMAC TPI, a la Entrada Núm. 90, págs. 2-3.
[56] *Íd.,* a la Entrada Núm. 91.
[57] *Íd.,* a la Entrada Núm. 93.

integridad y los endosos realizados, incluyendo aquellos cancelados ("endorsement erased"), cuya explicación fue juramentada por un representante autorizado de FirstBank. Por otro lado, indicó que el proceso de mediación compulsoria, requerido por la Ley Núm. 184-2012, concluyó debido a que la parte apelante rechazó expresamente continuar con el servicio de mediación. Asimismo, alegó que presentó evidencia clara de la titularidad legítima del pagaré y de la existencia de la deuda. A tenor, solicitó que se declarara *No Ha Lugar* la *Moción de reconsideración* de la parte apelante, toda vez que la misma no se demostraba que hubiese controversia material y reiteraba argumentos previamente resueltos.

En respuesta, mediante *Orden* emitida el 1 de diciembre de 2025, y notificada el 2 de diciembre de 2025, el tribunal de instancia declaró *No Ha Lugar* la *Moción de reconsideración* instada por la parte apelante.[58]

Insatisfecho aún, el 7 de enero de 2026, el señor Díaz López presentó un recurso de *apelación* en el cual esgrimió la comisión de los siguientes tres (3) errores:

> PRIMER SEÑALAMIENTO DE ERROR: ERRÓ EL TPI AL DICTAR SENTENCIA A FAVOR DE LA APELADA SIN HABER AÚN RECOBRARDO (SIC) JURISDICIÓN LUEGO DE HABER INICIALMENTE SOMETIDO EL CASO A LA MEDIACIÓN COMPULSORIA QUE MANDATA LA LEY 184-2012, TODA VEZ QUE EL PROCESO DE MEDIACIÓN NUNCA PUDO LLEVARSE A CABO, Y POR LO TANTO LA APELADA NUNCA TUVO LA OPORTUNIDAD DE OFRECERLE AL APELANTE UNA ALTERNATIVA VIABLE, DE BUENA FE, A LA EJECUCIÓN DE SU RESIDENCIA PRINCIPAL, SEGÚN RESUELTO EN EL CASO DE SCOTIABANK VS. ROSARIO, 205DPR537(2020)[.]

> SEGUNDO SEÑALAMIENTO DE ERROR: ERRÓ EL TPI AL NO DESESTIMAR SUMARIAMENTE LA DEMANDA, POR FALTA DE LEGITIMACIÓN ACTIVA Y DE CAUSA DE ACCION, Y POR CONSTITUIR COSA JUZGADA CON RESPECTO A LA SENTENCIA DICTADA EN EL CASO CD2015-1401, TODA VEZ QUE ES UN HECHO ADMITIDO, Y POR ENDE QUE NO PUEDE ESTAR EN CONTROVERSIA, QUE LA "CANCELACIÓN" DEL ENDOSO PREVIO EN EL PAGARÉ ES NULO Y SIN EFECTO LEGAL ALGUNO Y QUE LA APELADA CON (SIC) TIENE LEGITIMACIÓN ACTIVA NI CAUSA DE ACCIÓN[.]

---

[58] SUMAC TPI, a la Entrada Núm. 94.

TERCER SEÑALAMIENTO DE ERROR: ERRÓ EL TPI AL DICTAR SENTENCIA SUMARIA CUANDO, COMO MÍNIMO, EXIST[Í]A CONTROVERSIA SOBRE UN HECHO MATERIAL QUE IMPEDÍA QUE EL CASO [SE] PUDIESE ADJUDICAR POR LA V[Í]A SUMARIA[.]

Mediante *Resolución* emitida el 13 de enero de 2026, concedimos a la parte apelada hasta el 6 de febrero de 2026, para expresarse en torno al recurso. El 6 de febrero de 2026, compareció la parte apelada mediante *Alegato de la parte apelada.* Con el beneficio de la comparecencia de las partes, procederemos a disponer del recurso instado.

II

**A. La Sentencia Sumaria**

El mecanismo procesal de sentencia sumaria es un remedio discrecional extraordinario que, únicamente, se concederá cuando la evidencia que se presente con la moción establezca con claridad la existencia de un derecho.[59] El propósito de este mecanismo procesal es facilitar la solución justa, rápida y económica de los litigios civiles que no presenten controversias genuinas de hechos materiales, razón por la cual no ameritan la celebración de un juicio en su fondo.[60] A esos efectos, "solamente debe ser dictada una sentencia sumaria en casos claros, cuando el Tribunal tenga ante sí la verdad sobre todos los hechos pertinentes".[61] Es decir, para que proceda dictar sentencia por la vía sumaria, es imprescindible que de los documentos que acompañan la solicitud o que obran en el expediente del tribunal no surja controversia legítima sobre hechos materiales del caso, y que, por ende, sólo reste aplicar el derecho.[62] Ahora bien, a los fines de considerar la moción, se tendrán como ciertos todos los hechos no controvertidos que consten en los

---

[59] *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 911 (1994).
[60] *García Rivera et al. v. Enríquez*, 153 DPR 323, 337 (2001); *Pilot Life Ins. Co. v. Crespo Martínez*, 136 DPR 624, 632 (1994).
[61] *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, supra, a las págs. 911-912, citando a *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 DPR 714, 721 (1986) (Cita depurada); *Cuadrado Lugo v. Santiago Rodríguez*, 126 DPR 272, 279 (1990).
[62] *Nissen Holland v. Genthaller*, 172 DPR 503, 511 (2007).

documentos y declaraciones juradas ofrecidas por la parte promovente.[63] No obstante, tales documentos deben evaluarse de la forma más favorable para la parte que se opone a la moción.[64]

La Regla 36 de Procedimiento Civil regula todo lo concerniente a las solicitudes de sentencia sumaria. En específico, la Regla 36.3 (a) de Procedimiento Civil requiere que la parte que promueve la solicitud de sentencia sumaria cumpla con los requisitos de forma siguientes:

(1) una exposición breve de las alegaciones de las partes;

(2) los asuntos litigiosos o en controversia;

(3) la causa de acción sobre la cual se solicita la sentencia sumaria;

(4) una relación concisa, organizada y con párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, indicando los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;

(5) las razones por las cuales se debe dictar sentencia argumentando el derecho aplicable, y

(6) el remedio que debe ser concedido.[65]

Cumplidos los requisitos establecidos para la solicitud de sentencia sumaria, el inciso (e) de la Regla 36.3 de Procedimiento Civil establece que:

La sentencia solicitada será dictada inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que, como cuestión de derecho, el tribunal debe dictar sentencia sumaria a favor de la parte promovente.[66]

No obstante, lo anterior, el solo hecho de no presentar evidencia que controvierta lo presentado por la parte promovente no

---

[63] *H.M.C.A. (P.R.), Inc., etc. v. Contralor*, 133 DPR 945, 957 (1993).
[64] *Íd.*, a la pág. 957.
[65] 32 LPRA Ap. V, R. 36.3.
[66] *Íd.*, R. 36.3 (e); *García Rivera et al. v. Enríquez*, supra, a la pág. 338; *Roldán Flores v. M. Cuebas,* 199 DPR 664, 676 (2018); *Lugo Montalvo v. Sol Meliá Vacation,* 194 DPR 209, 225 (2015).

implica necesariamente que proceda la sentencia sumaria.[67] Sobre este particular, el Tribunal Supremo ha resuelto que las partes no puede descansar en aseveraciones generales, es decir, meras afirmaciones no bastan.[68] A esos efectos, y a tenor con la Regla 36.5 de Procedimiento Civil,[69] las partes estarán obligadas a demostrar que tienen evidencia para sustanciar sus alegaciones.[70]

Por otra parte, es menester subrayar que nuestro Tribunal Supremo ha indicado que el mecanismo de sentencia sumaria no es el apropiado para resolver casos en los cuales hay elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor de credibilidad sea esencial.[71] De la misma manera, también ha razonado que "hay litigios y controversias que por la naturaleza de estos no hacen deseable o aconsejable el resolverlos mediante una sentencia sumariamente dictada, porque difícilmente en tales casos el Tribunal puede reunir ante sí toda la verdad de los hechos a través de "affidavits' o deposiciones".[72]

En cuanto al proceso de revisión de las sentencias sumarias, nuestro Alto Foro ha sido enfático en que el Tribunal de Apelaciones debe:

> (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario;
>
> (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36;
>
> (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer

---

[67] *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, supra, a la pág. 913; *García Rivera et al. v. Enríquez*, supra, a la pág. 338; *Consejo Tit. C. Parkside v. MGIC Fin. Corp.*, 128 DPR 538, 549 (1991); *Cuadrado Lugo v. Santiago Rodríguez*, 126 DPR 272, 281 (1990).

[68] *Flores v. Municipio de Caguas*, 114 DPR 521, 525 (1983); *Ramos Pérez v. Univisión*, 178 DPR 200, 215-216 (2010).

[69] 32 LPRA Ap. V, R. 36.5.

[70] *Flores v. Municipio de Caguas*, supra, a la pág. 525; *Ramos Pérez v. Univisión*, supra, a las págs. 215-216.

[71] *Elías y otros v. Chenet y otros*, 147 DPR 507, 521 (1999); *Soto v. Hotel Caribe Hilton*, 137 DPR 294, 301 (1994); *Velázquez Ortiz v. Mun. de Humacao*, 197 DPR 656, 663 (2017).

[72] *Elías y otros v. Chenet y otros*, supra, a la pág. 521, citando a *García López v. Méndez García*, 88 DPR 363, 380 (1963).

concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y

(4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.[73]

Ahora bien, la sentencia sumaria no procederá en las instancias que: (i) existan hechos materiales y esenciales controvertidos; (ii) haya alegaciones afirmativas en la demanda que no han sido refutadas; (iii) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial, o (iv) como cuestión de derecho, no proceda.[74] Además, al revisar la determinación del foro primario, respecto a una sentencia sumaria, estamos limitados de dos (2) maneras. *Primero*, solo podemos considerar los documentos que se presentaron ante el foro de primera instancia. Es decir, "las partes no pueden añadir en apelación exhibits, deposiciones o affidávits que no fueron presentados oportunamente en el foro de primera instancia, ni pueden, por primera vez ante el foro apelativo, esbozar teorías nuevas o esgrimir asuntos nuevos".[75] *Segundo*, solo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta.[76] Entiéndase, que al foro apelativo le es vedado adjudicar los hechos materiales esenciales en disputa, ya que dicha tarea le corresponde al foro de primera instancia.[77]

## B. La Ley para Mediación Compulsoria y Preservación de tu Hogar

La Asamblea Legislativa aprobó la Ley Núm. 184-2012, mejor conocida como la Ley para Mediación Compulsoria y Preservación de tu Hogar en los Procesos de Ejecuciones de Hipotecas de una

---

[73] *Roldán Flores v. M. Cuebas, et al.*, supra, 679. (Cita depurada); *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 118-119 (2015).
[74] *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 335-336 (2021).
[75] *Meléndez González et al. v. M. Cuebas*, supra, a la pág. 114. (Cita depurada).
[76] *Íd.*, a la pág. 115.
[77] *Vera v. Dr. Bravo*, 161 DPR 308, 335 (2004).

Vivienda Principal (Ley Núm. 184),[78] con el propósito reparador de evitar y disminuir los procesos de ejecución de hipotecas.[79] Mediante dicha legislación, se creó un proceso de mediación compulsoria ante los tribunales de Puerto Rico o ante los foros administrativos correspondientes, previo a que cualquier entidad bancaria lleve un proceso de ejecución de hipoteca de cualquier propiedad de vivienda utilizada como hogar principal en Puerto Rico.[80]

Como corolario de lo anterior, el Artículo 3 de la Ley Núm. 184 dispone que un deudor hipotecario únicamente tendrá derecho a la mediación cuando la acción de ejecución de hipoteca implique la propiedad residencial que constituya su vivienda principal.[81] Durante dicho proceso, el acreedor notificará al deudor sobre todas las alternativas disponibles para evitar la ejecución de la hipoteca o la venta judicial de la propiedad residencial.[82] El propósito será poder llegar a un acuerdo o una modificación que permita al deudor establecer un acuerdo de pago u otra alternativa satisfactoria a las partes y no perder su vivienda principal.[83] Por otra parte, es menester resaltar que el mediador completará un informe al Tribunal de Primera Instancia, en el cual incluirá los incidentes procesales que puedan afectar el proceso.[84]

Precisa destacar, igualmente, que celebrar una vista o un acto de mediación compulsorio es un requisito jurisdiccional en procesos para la ejecución de una hipoteca garantizada con una propiedad residencial que constituya una vivienda personal del deudor.[85] En caso de que no se cumpla con el referido requisito, no podrá dictarse

---

[78] 32 LPRA sec. 2881 *et seq.*
[79] *Íd.*, Exposición de Motivos.
[80] Exposición de Ley Núm. 184, *supra.*
[81] *Bco. Santander v. Correa García,* 196 DPR 452, 464 (2016).
[82] Artículo 2 de la Ley Núm. 184-2012, *supra,* 32 LPRA sec. 2881. Véase, además, *Scotiabank v. SLG Rosario-Castro,* 205 DPR 537, 549 (2020).
[83] Artículo 2 de la Ley Núm. 184-2012, *supra.*
[84] *Íd.*
[85] *Scotiabank v. SLG Rosario-Castro,* supra, a la pág. 549.

sentencia ni ordenarse la venta judicial del inmueble que se utiliza como residencia principal.[86] Sobre este particular cabe subrayar que el requisito jurisdiccional que impone la Ley Núm. 184, se refiere a que ocurra un señalamiento o citación para una vista de mediación. No obstante, la extensión del procedimiento y su resultado dependerá de la conducta de las partes.[87]

Acorde con lo establecido anteriormente, el tribunal podrá continuar el proceso judicial cuando: (1) el acreedor acudió a la vista de mediación, pero el deudor no se presentó; (2) las partes acudieron a la vista y se cumplieron los requisitos de ley, pero no llegaron a un acuerdo, o (3) el deudor incumplió con los acuerdos contraídos como resultado del proceso de mediación.[88] Por otro lado, es importante reseñar que el mero hecho de que las partes comparezcan a una vista de mediación y no lleguen a un acuerdo, sin más, no es suficiente para determinar que el proceso de mediación culminó infructuosamente.[89]

Ahora bien, nuestro Tribunal Supremo ha indicado que, cuando surja una controversia sobre la liquidez de la deuda en un caso de cobro de dinero y ejecución de hipoteca, el Tribunal de Primera Instancia la deberá resolver antes de referir el asunto al Procedimiento de Mediación Compulsoria, cuando este aplique.[90] Asimismo, si un caso es devuelto al foro primario por surgir una controversia de derecho que impidió la efectiva realización del procedimiento de mediación, según lo establece la Ley Núm. 184, el tribunal deberá resolverla conforme al derecho aplicable, para así asegurar que el procedimiento de mediación compulsoria sea efectivo y conforme a lo dispuesto en la ley.[91] Solo cuando el tribunal

---

[86] *Oriental Bank v. Caballero García*, 212 DPR 671, 681 (2023).
[87] *Scotiabank v. SLG Rosario-Castro*, supra. a la pág. 550.
[88] *Oriental Bank v Caballero García*, supra, a las págs. 681-682.
[89] *Íd.*, a la pág. 684.
[90] *Íd.*, a la pág. 685.
[91] *Íd.*

de instancia se asegure de que el procedimiento de mediación compulsoria se cumplió, podrá dictar la sentencia que proceda.[92] De lo contrario, deberá referir el caso nuevamente para que se complete el proceso que requiere la Ley Núm. 184 y su jurisprudencia interpretativa.[93]

III

En el recurso de apelación ante nuestra consideración, el apelante plantea que el foro de instancia cometió tres (3) errores por los cuales se justifica la revocación del dictamen apelado. En el *primer* error, plantea, en síntesis, que el tribunal de instancia falló al dictar sentencia a favor de First Bank sin que se hubiese recobrado jurisdicción, luego de haberse referido el caso a mediación compulsoria. Igualmente, aduce que la mediación nunca se llevó a cabo dado a que no le ofrecieron una alternativa viable, conforme a lo resuelto en el caso *Scotiabank v. Rosario*, 205 DPR 537 (2020). De otra parte, en su *segundo* error, esgrime que el foro *a quo* incidió al no desestimar la demanda sumariamente por falta de legitimación activa y de causa de acción, así como por constituir cosa juzgada, en vista de lo resuelto en el alfanumérico CD2015-1401. Por último, en su *tercer* señalamiento error arguyó que el tribunal apelado se equivocó al resolver el caso por la vía sumaria, tras razonar que existía controversia sobre un hecho material que impedía este proceder.

Consideramos que el *primer* error alzado puede ser discutido de forma separada, empero, el *segundo* y *tercer* error serán discutidos en conjunto, por lo que así obraremos.

Según adelantamos, en el *primer* error esgrimido por el apelante, nos invita a concluir que el tribunal de instancia falló al dictar sentencia a favor de First Bank sin que se hubiese recobrado

---

[92] *Oriental Bank v Caballero García,* supra, a la pág. 685.
[93] *Íd.*

jurisdicción luego de haberse referido el caso a mediación compulsoria, aduciendo además que la mediación nunca se llevó a cabo, por lo que no le ofrecieron una alternativa viable, conforme a lo resuelto en el caso *Scotiabank v. Rosario*, 205 DPR 537 (2020).

La Ley Núm. 184-2012 dispone que un deudor hipotecario tendrá derecho a la mediación en la acción de ejecución de hipoteca sobre la propiedad residencial que constituya su vivienda principal.[94] El propósito de la mediación será poder llegar a un convenio o a una modificación que permita al deudor establecer un acuerdo de pago u otra alternativa satisfactoria a las partes y así no perder su vivienda principal.[95] Sobre este procedimiento, es menester resaltar que el mediador completará un informe al Tribunal de Primera Instancia, en el cual incluirá los incidentes procesales que puedan afectar el proceso.[96]

Por otra parte, conforme a lo resuelto en *Scotiabank v. Rosario*, 205 DPR 537 (2020), celebrar una vista o un acto de mediación es un requisito jurisdiccional en los procesos para la ejecución de una hipoteca garantizada con una propiedad residencial que constituya una vivienda personal del deudor.[97] No obstante, el requisito jurisdiccional que impone la Ley Núm. 184, se refiere a que ocurra un señalamiento o citación para una vista de mediación, sin embargo la extensión del procedimiento y su resultado dependerá de la conducta de las partes.[98] Acorde con ello, y en lo pertinente al caso ante nos, el tribunal podrá continuar el proceso judicial cuando las partes acudieron a la vista y se cumplieron los requisitos de ley, pero no llegaron a un acuerdo.[99]

---

[94] *Bco. Santander v. Correa García*, supra, a la pág. 464.
[95] *Scotiabank v. SLG Rosario-Castro*, supra, a la pág. 549.
[96] Artículo 3 de la Ley Núm. 184-2012, *supra*.
[97] *Scotiabank v. SLG Rosario-Castro*, supra, a la pág. 549.
[98] *Íd.*, a la pág. 550.
[99] *Oriental Bank v Caballero García*, supra, a las págs. 681-682.

Según hemos reseñado, el caso de marras fue presentado el 5 de mayo de 2023. De ahí, el tribunal de instancia refirió el caso por primera vez al CMC, mediante *Orden*, notificada el 6 de junio de 2023. Así las cosas, el 11 de septiembre de 2023, el CMC presentó una *Moción informativa para devolver el caso al tribunal* mediante la cual esbozó que, durante las entrevistas individuales a las partes, surgieron cuestionamientos sobre una alegada sentencia previa y otros aspectos de derecho que, según fue informado escapaban la autoridad del CMC y que no habían sido planteados ante el tribunal de instancia. Entonces, el foro *a quo* procedió a atender los planteamientos lo que desencadenó en que posteriormente, el 10 de junio de 2024, el foro de instancia emitió *Resolución* en la cual declaró *No Ha Lugar* una solicitud de desestimación instada por la parte apelante y determinó que First Bank, como tenedor del pagaré endosado a su favor, tenía derecho a presentar causa de acción de cobro de dinero y ejecución de hipoteca ya que demostró tener legitimación activa. En consecuencia, en esa misma fecha, el foro primario notificó una segunda orden refiriendo el caso al CMC.

De lo que sigue, el 19 de agosto de 2024, el CMC presentó una *Moción sobre resultado del proceso de mediación* en la cual indicó que el señor Díaz López no aceptó el servicio de mediación, por lo que dio por concluida su intervención para dar paso al trámite judicial que correspondiera. En reacción, el señor Díaz López presentó un escrito con la intención de aclarar que en ningún momento expresó que no aceptaba el proceso de mediación. Alegó que lo que le expresó a la representante del CMC fue que la *Resolución* que denegó la solicitud de desestimación, aún no era final y firme debido a que había radicado ante este foro apelativo una petición de *certiorari* en el alfanumérico KLCE202400888. Explicó que, mientras estuviese pendiente una adjudicación judicial

que pudiera disponer del caso, no era procedente llevar a cabo el proceso de mediación compulsoria.

Con relación a este recurso apelativo, un Panel hermano dispuso denegar la expedición del auto de *certiorari*. Subsiguientemente, el foro de instancia emitió una tercera orden para referir el caso al CMC. Consecuentemente, el 13 de mayo de 2025, el CMC instó una *Moción sobre resultado del proceso de mediación* mediante la cual informó que el señor Díaz López durante el proceso de entrevista y orientación, **el apelante expresó que no aceptaba el servicio de mediación y dio por concluida su intervención para dar paso al trámite judicial que correspondiera**.[100]

Según hemos relatado, concluido el proceso de mediación, el apelante optó por tomar una deposición a un representante de First Bank para conocer si esta entidad era la legítima tenedora por endoso del pagaré, trámite que fue realizado.

A casi de tres (3) meses de haber concluido el trámite en el CMC, el 7 de agosto de 2025, First Bank interpuso un escrito para continuar y en solicitud de que se dictara sentencia sumaria. El foro de instancia concedió al apelante el término reglamentario para presentar su postura. Sin embargo, de forma oportuna, el apelante solicitó la reconsideración de la misma. Solicitó, en síntesis, que se dejara sin efecto la reanudación del caso, que ordenara a las partes a informar cuando estuviese la transcripción de la deposición certificada y que se considerara un término para expresarse en torno al resultado de la misma. En respuesta, mediante *Orden* notificada el 25 de agosto de 2025, el foro *a quo* dispuso que el apelante debía cumplir con lo ordenado, es decir, contestar la solicitud de sentencia

---

[100] Énfasis nuestro.

sumaria incoada por First Bank.[101] Entonces, el apelante procedió a contestar la solicitud de sentencia sumaria. Puntualizamos que, como parte del referido escrito, el apelante incluyó una solicitud de sentencia sumaria para que se desestimara sumariamente el caso del título.

Con lo anterior en mente y en atención al error esgrimido, debemos resolver si el foro *a quo* erró tras dictar sentencia sumaria, sin haber recobrado jurisdicción luego de haberse sometido el caso a mediación. En otras palabras, si debemos entender que se cumplió o no con la mediación compulsoria que mandata la Ley Núm. 184-2012.

Tras un minucioso estudio de la totalidad del expediente electrónico del caso, disponible a través del SUMAC, colegimos que la parte apelante no presentó ninguna prueba fehaciente que acreditara que el proceso de mediación nunca se llevó a cabo. Reiteramos que el caso ante nuestra consideración fue referido al CMC en tres (3) ocasiones y que, de las *mociones sobre resultado del proceso de mediación*, emitidas por el CMC el 19 de agosto de 2024 y 13 de mayo de 2025, respectivamente, se desprende, haciendo énfasis en el último referido que el señor Díaz López, durante el proceso de entrevista y orientación, **no aceptó** el servicio de mediación. Consecuentemente, aunque la parte apelante alega que nunca se le ofreció una alternativa viable y de buena fe a la ejecución de su residencia, lo cierto es que este se negó a recibir dichos servicios. Por otra parte, entendemos que el caso fue correctamente referido al CMC, toda vez que surge del pagaré que First Bank es el legítimo tenedor del mismo, por lo que no había duda de que First Bank tenía legitimación activa para cobrar las cantidades

---

[101] De los autos no se desprende que se hubiese presentado recurso apelativo alguno en cuanto a este dictamen.

adeudadas por la parte apelante. Por todo lo anteriormente expuesto, disponemos que el *primer* error no fue cometido.

Establecido lo anterior, pasemos entonces al *segundo* y *tercer* error. En el *tercer* error el apelante plantea, en esencia, que el foro *a quo* incidió al disponer del presente caso por la vía sumaria mientras que, en el *segundo* error, plantea que el tribunal también falló al no haber desestimado la demanda sumariamente por falta de legitimación activa y de causa de acción, así como por constituir cosa juzgada, conforme a lo resuelto en el alfanumérico CD2015-1401. Por otro lado, en el *tercer* error arguyó, además, que el tribunal apelado se equivocó al resolver el caso por la vía sumaria, tras razonar que existía controversia sobre un hecho material que impedía este proceder.

En vista de que, para determinar la comisión de los aludidos errores por parte del tribunal *a quo* era necesario examinar la procedencia de la solicitud de sentencia sumaria incoada por la parte apelada, nos dispusimos a examinar *de novo* este escrito, así como el pliego en oposición y en solicitud de sentencia sumaria desestimando la demanda presentada por la parte apelante. Tras revisar los autos del presente caso y el derecho aplicable, se desprende que la parte apelada cumplió a cabalidad con los requisitos exigidos por la Regla 36.2 de Procedimiento Civil,[102] al instar su solicitud de sentencia sumaria. Ahora bien, de un examen de la oposición de la parte apelante, aunque esta, esencialmente, cumplió con los requisitos establecidos en la Regla 36.3 (B) de Procedimiento Civil,[103] no hizo referencia a ninguna prueba que demostrara la razón por la cual había controversia sobre los mismos. Por tal razón, adelantamos que el apelante no logró establecer controversias de hechos materiales suficientes que

---

[102] 32 LPRA Ap. V, R. 36.2.
[103] 32 LPRA Ap. V, R. 36.3.

ameritaran declarar sin lugar el petitorio sumario incoado por First Bank. Veamos.

En el caso de marras, First Bank presentó el pagaré en controversia del cual se desprende un *allonge* adherido al mismo con un endoso a su favor.[104] Por lo que, de esta manera, probó ser tenedora de buena fe de dicho pagaré. Conforme se desprende del pagaré, el primer endoso fue realizado por RG Premier Bank of Puerto Rico a nombre de Doral Bank. Luego, según surge del *allonge* del pagaré, Doral Bank realizó un endoso a nombre del Banco Popular de Puerto Rico (Banco Popular) y, posteriormente, el Banco Popular emitió un endoso a favor de First Bank. Por otra parte, en lo relativo al endoso de Doral Bank a favor de Federal Home Loan Bank of New York y al endoso de este último a favor de First Bank, estos aparecen en el pagaré con un sello que dice "endorsement erased".[105] Conviene mencionar que, según explicado en la deposición tomada a la señora Laura Dávila Mercado (señora Dávila Mercado), funcionaria de Firstbank, una vez se cancela un endoso, es como si el mismo no se hubiese realizado.[106]

Por todo lo anterior, nos es forzoso concluir que el endoso de Doral Bank a favor de Federal Home Loan Bank of New York y el endoso este último a favor de First Bank no deben ser considerados parte de la cadena de endosos. Ante ello, se debe entender que el pagaré pasó de Doral Bank al Banco Popular y, posteriormente, del Banco Popular a First Bank. Lo anterior, independientemente de lo que pueda alegar el apelante en torno al caso que presentó First Bank contra esta parte hace más de diez (10) años atrás y que fue desestimado. En mérito de lo antes expuesto, distinto a lo que

---

[104] SUMAC TPI, a la Entrada Núm. 1, Anejo 1. Véase, además, SUMAC TPI, a la Entrada Núm. 80, Anejo 2.
[105] *Id.*
[106] Deposición de Laura Dávila Mercado, página 98, líneas 11-25, y página 99, líneas 1-10.

sostiene el apelante, dicho pagaré resulta suficiente para sostener la legitimación y causa de acción de First Bank en el caso de autos.

Por otra parte, en lo relativo al argumento de la parte apelante en cuanto a que la *Sentencia* que nos ocupa constituye cosa juzgada con respecto a la *Sentencia* dictada en el alfanumérico CD2015-1401, colegimos con lo resuelto en la *Resolución* emitida por el foro de instancia el 10 de junio de 2024, mediante la cual declaró *No Ha Lugar* la desestimación de la *Demanda* instada por First Bank, y determinó que la antedicha sentencia desestimatoria, en el alfanumérico CD2015-1401, fue sin perjuicio, toda vez que el foro que no adjudicó en los méritos la causa de acción de cobro de dinero y ejecución de hipoteca.

Ante el escenario anterior, y después de examinar cuidadosamente *de novo* el trámite procesal, el expediente ante nos, los escritos de las partes, así como la normativa aplicable, concluimos que el Tribunal de Primera Instancia no erró en su determinación y, por consiguiente, el s*egundo* y *tercer* error no se cometieron. A tenor, procede *confirmar* la sentencia apelada.

IV

Por los fundamentos que anteceden, se *confirma* la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís<br>
Secretaria del Tribunal de Apelaciones